UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SALVADOR VARGAS,

                Plaintiff,

– against –

ALPHONSO DIPILATO *and*
ALPHONSO'S PIZZERIA, INC.

                Defendants.

**OPINION & ORDER**

21 Civ. 3884 (ER)

RAMOS, D.J.:

      Salvador Vargas brought this action against Alphonso's Pizzeria and its owner, Alphonso DiPilato, alleging that he worked for Alphonso's for five years and that he was denied overtime pay, minimum wage, spread of hours pay, and paystubs or wage notices. Doc. 1. Daniel Johnson purchased the Pizzeria in August 2022 after DiPilato filed for personal bankruptcy. *Id.* ¶ 18; Doc. 131 at 3. On October 25, 2024, Vargas filed an application for a discovery subpoena for Johnson's Gmail account to be served on Google, located at 1600 Amphitheater Parkway, Mountain View, CA, 94303 in Superior Court of California, County of Santa Clara, the county where Google is located. Subp. 030, *Vargas v. DiPilato*, No. 24-CV-450267 (Cal. Super. Ct. Oct. 25, 2024). Now before the Court is Johnson's motion to quash the subpoena. Doc. 130. For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

### A. Factual Background

Vargas was employed at Alphonso's located at 525 Grand Street, New York, doing cleaning, setup, and delivery work for 5 years, until February 2021. Doc. 1 ¶¶ 9–10. Vargas worked 6 days a week from approximately 10:00 am to 11:00 pm or 12:00 am. *Id.* ¶ 11. He was paid $475/week and never received overtime premiums or spread of hours' pay. *Id.* ¶ 12. During Vargas' employment, DiPilato owned Alphonso's

indirectly through entities that exercised nominal ownership, including Ah-Beets Foods, Inc. *Id.* ¶¶ 9, 15–16. DiPilato also managed and operated Alphonso's, which meant that he was responsible for hiring and firing employees and deciding the terms of their employment, including their rate of pay. *Id.* ¶¶ 9, 14. Alphonso's made approximately 60 to 90 deliveries daily, each with a profit of approximately $30, meaning that the Pizzeria earned over $500,000 in revenue annually. *Id.* ¶ 13.

In January 2019, another worker at Alphonso's brought a wage and hour suit against DiPilato, who at the time operated Alphonso's through Ah-Beets Foods, Inc. *Id.* ¶ 16. Approximately 18 months later, on June 30, 2020, a new corporation, "Alphonso's Pizzeria, Inc.," was created and controlled Alphonso's as a successor-in-interest to Ah-Beets Foods, Inc. *Id.* ¶ 17.[1] Shortly thereafter, on July 6, 2020, DiPilato filed for personal bankruptcy and estimated the value of his interest in Ah-Beets Foods, Inc. at $1.00. *Id.* ¶ 18. Consequently, Vargas alleges the transfer to Alphonso's Pizzeria, Inc. was conducted solely to defeat the claims of creditors like Vargas. *Id.* ¶ 19.

Vargas' counsel informed DiPilato on March 2, 2021 that Vargas intended to bring suit for labor law violations, and DiPilato acknowledged receipt of the email two days later and denied that he ever employed Vargas. Doc. 41 at 22.

Daniel Johnson purchased Alphonso's in August 2022. Doc. 131 at 3. Vargas claims that although Johnson claims to have no relationship with DiPilato, there have been nearly 2000 calls and/or text messages exchanged between the two since 2020. *Id.* at 2. Vargas alleges that Johnson and DiPilato have been playing a "corporate shell game" in which they operate Alphonso's with the same ownership but set up the documentation to create the false impression of a legitimate transfer to an innocent new owner. *Id.* Vargas further claims that the documentary evidence indicates that Johnson

---

[1] To the extent that another entity was Ah-Beets Foods, Inc.'s successor-in-interest, Vargas names it as a John Doe Corp. defendant. Doc. 1 ¶ 17.

2

used his Gmail account in connection with his efforts to cover up the relationship with DiPilato. *Id*.

### B. Procedural Background

Vargas filed the instant action against DiPilato and Alphonso's ("Defendants") on May 2, 2021. Doc. 1. Vargas filed an affidavit of service on DiPilato on June 6, 2021, stating that the summons and complaint had been served on "JUAN 'SMITH,'" DiPilato's co-worker (who refused to state his true last name), at 525 Grand Street "C/O ALPHONSO'S PIZZA (A/K/A PIZZA SHACK)" on June 2, 2021 and had also been mailed to the same address. Doc. 8. Vargas also sought leave to serve DiPilato by alternate means—namely, email—on August 5, 2021. Doc. 9. On August 10, 2021, the Court denied the request without prejudice on the basis that Vargas must first show that "personal service and/or 'nail and mail' service pursuant to C.P.L.R. §§ 308(1) and (4) would be impracticable" before the Court could permit service by alternate means. Doc 12.

Vargas obtained certificates of default for DiPilato and Alphonso's on September 1, 2021. Docs. 20, 21. The Court issued an order on April 8, 2022 directing Defendants to show cause why default judgment should not be entered against them. Doc. 23. At the show cause hearing on May 6, 2022, DiPilato appeared *pro se*, and the Court directed him to retain counsel for Alphonso's and have counsel enter an appearance by June 3, 2022. May 6, 2022 Minute Entry. Mark Herman subsequently entered an appearance for Defendants on May 31, 2022. Doc. 24. On June 16, 2022, Defendants answered and asserted that DiPilato was never properly served, and the Court therefore lacked personal jurisdiction over him. Doc. 26.

Following Defendants' failure to participate in discovery, Vargas again moved for default judgment on November 9, 2022. Docs. 35, 36. The Court scheduled a hearing for December 14, 2022 and directed Defendants to show cause as to why default judgment should not be entered against them. Doc. 37. Default judgment was entered

against Alphonso's, which did not appear at the hearing through counsel; Herman appeared for DiPilato, and DiPilato was granted leave to file a motion why default judgment should not be entered. Doc. 40. On January 12, 2023, DiPilato instead filed a motion to dismiss for lack of jurisdiction. Doc. 41. The Court denied the motion to dismiss on September 18, 2023. Doc. 58.

Vargas's counsel served a subpoena on Google for Johnson's Gmail account on October 11, 2024. Doc 121. On October 25, 2024, Vargas then filed an application for the same subpoena in Superior Court of California, County of Santa Clara. Subp. 030, *Vargas v. DiPilato*, No. 24-CV-450267 (Cal. Super. Ct. Oct. 23, 2024). Johnson filed a motion to quash in this Court on January 23, 2025, arguing the subpoena violates the Stored Communications Act and seeks improper information. Docs. 130, 131. The Court scheduled a status conference on July 22, 2025. Doc. 136. During this conference, Vargas's counsel stated that when he served the subpoena on Google, Google informed him that it would only comply with a subpoena issued by a California court.

## II.   LEGAL STANDARDS

### A. Rule 45 Motion to Quash a Subpoena

After the 2013 amendments, Rule 45 now requires subpoenas to issue from "the court where the action is pending," Fed. R. Civ. P. 45(a)(2), but still reserves the power to quash or modify a subpoena to the "court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3); *KGK Jewelry LLC v. ESDNetwork*, No. 11-CV-9236 (RE), 2014 WL 1199326, at *2 (S.D.N.Y. Mar. 21, 2014); *see In re Smerling Litigation*, No. 21-CV-2552 (JPC), 2022 WL 684148, at *1 (S.D.N.Y. Mar. 8, 2022) ("Under Rule 45(a)(2), [a] subpoena must issue from the court where the action is pending."). However, Rule 45(f) states that "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f); *KGK Jewelry*, 2014 WL 1199326, at *2.

4

"The 'place of compliance' for a non-party subpoena seeking 'documents, electronically stored information and tangible things' is 'a place within 100 miles of where the person resides, is employed, or regularly transacts business in person.'" *Greater Chautauqua Federal Credit Union v. Quattrone*, No. 1:22-CV-2753 (MKV), 2024 WL 497521, at *1 (S.D.N.Y. Jan. 3, 2024) (quoting *American Plan Administrators v. South Broward Hospital District*, No. 21-MC-2663 (KAM) (TAM), 2021 WL 6064845, at *2 (E.D.N.Y. 2021), *appeal dismissed*, 39 F.4th 59 (2d Cir. 2022)).

III. DISCUSSION

The motion to quash must be denied because this is not the district where compliance by Google is required. Google's principal place of business, where compliance is required, is not within 100 miles of the Southern District of New York. *Greater Chautauqua Federal Credit Union*, 2024 WL 497521, at *1. The power to quash or modify a subpoena is reserved to the court for the district where compliance is required. Fed. R. Civ. P. 45(d)(3); *KGK Jewelry*, 2014 WL 1199326, at *2. Therefore, pursuant to Rule 45, this Court lacks the authority to modify or quash the subpoena. *See In re Smerling Litigation*, 2022 WL 684148, at *2 (holding that World Class should have brought its motion in the United States District Court for the Southern District of Florida because the subpoenas issued to World Class require compliance in Boca Raton, Florida, where World Class has its principal place of business); *Arrowhead Capital Finance, Ltd. v. Seven Arts Entertainment, Inc.*, No. 14-CV-6512 (KPF), 2021 WL 411379, at *3 (S.D.N.Y. Feb. 5, 2021) (finding that the intervenor should have brought its motion in the United States District Court for the Central District of California because the subpoenas issued to the intervenor require compliance in Los Angeles, where the intervenor has its principal place of business).

Moreover, pursuant to Rule 45(f), a motion to compel compliance with the subpoena could not be transferred here because this Court is not the issuing court. Fed. R. Civ. P. 45(f); *see Abercrombie & Fitch Trading, Co. v. Beauty Encounter, Inc.*, No.

5

24-MC-00009 (LJL), 2024 WL 308097, at *1(S.D.N.Y. Jan. 26, 2024) ("When the court of compliance did not issue a subpoena, it may transfer a motion to compel compliance with that subpoena 'to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances.'"). As counsel for Vargas stated at the July 22, 2025 telephonic conference, he filed an application for subpoena in the California Court because Google advised him to do so. The California Court is therefore the issuing court. Since no other FRCP rule authorizes the transfer of such a motion to another court, a motion to quash or modify the subpoena cannot be transferred to this Court.

### IV.     CONCLUSION

For the reasons set forth above, the Court DENIES the motion.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 130.

It is SO ORDERED.

Dated:  July 24, 2025
        New York, New York

                                            _____
                                            EDGARDO RAMOS, U.S.D.J.